UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORI ANN DEAN<br><br>                              Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                              Defendant. | NO.  C3:13-CV-01545-MJP-JLW<br><br>REPORT AND RECOMMENDATION |

<u>BASIC DATA</u>

Type of benefits sought:

   (X) Supplemental Security Income – Disability

Plaintiff's:

   Sex: Female

   Age:  51 at application, 53 at ALJ hearing

Principal Disabilities Alleged by Plaintiff:  Depression, Anxiety, chronic neck and back pain, obesity, arthritis, left foot impairment, menopause, AR 181

Disability Allegedly Began: original date August 1, 2001, amended to June 19, 2009

Principal Previous Work Experience: nanny, receptionist, customer service

Plaintiff Last Worked: July 2001, three months as receptionist for M.A.D.D.

Education Level Achieved by Plaintiff: High School Graduate, a few months of college

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY – ADMINISTRATIVE

Before ALJ:

    Date of Hearing: August 4, 2011

    Date of Decision: August 26, 2011

    Appears in Record at:  Decision AR 761-776, Hearing Transcript AR 16-72

    Summary of Decision:

    The claimant has not engaged in substantial gainful employment since the application date of June 19, 2011. She has the severe impairments of depression, anxiety, right knee osteoarthritis, right wrist Madelung's deformity, obesity and hypertension. These impairments, alone or in combination, do not meet or equal a Listing. She has the Residual Functional Capacity ("RFC") to perform light work, without restrictions in sitting, standing or walking. She can frequently kneel, stoop and crouch, but cannot climb ropes, ladders, or scaffolds. She must avoid concentrated exposure to hazards. She has sufficient concentration to understand, remember, and carry out simple routine tasks found in unskilled work Specific Vocational Preparation 2 ("SVP 2"). She can also perform well-learned complex instructions (SVP 3) for 2/3 of the workday. She can work superficially with the general public and coworkers. With the RFC as defined, claimant is capable of performing past relevant work as receptionist. She can also perform the representative occupations of toy stuffer, plastic computer board inspector, and grain picker which are available in substantial numbers in the economy.

Before Appeals Council:

    Date of Decision: July 17, 2013

    Appears in Record at: AR 1-6

    Summary of Decision: declined review

## PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

## RECOMMENDATION OF

## UNITED STATES MAGISTRATE JUDGE

    (X)  Remand

REPORT AND RECOMMENDATION - 2

## SUMMARY OF RECOMMENDATION

The ALJ stated a specific and cogent reason for not accepting Plaintiff's credibility. She properly evaluated the medical evidence presented by the three psychologists and the state agency medical consultant. Her determination as to Plaintiff's RFC is supported by the record. It was error by the ALJ to find that Plaintiff could perform her prior work, because that employment did not provide sufficient compensation to qualify as "prior relevnt work." Plaintiff is not entitled to benefits based upon the Guidelines, because she has the RFC to perform light work. The case therefore turns upon whether Plaintiff can perform "other work," at step five of the required analysis. The vocational expert (VE) at the hearing testified that Plaintiff could perform the light work of grain picker. But the hypothetical question which elicited that testimony was defective, primarily because of Plaintiff's confusing testimony as to which of her wrists was impaired. As a result, it is unclear whether Plaintiff can perform other work. Remand is required for further proceedings to clarify whether a right hand dominant person with plaintiff's impairments can perform the job of grain picker.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 3

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *See also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## ISSUES ON APPEAL

A. Did the ALJ properly evaluate Plaintiff's credibility?

B. Did the ALJ properly evaluate the opinions of three examining psychologists?

REPORT AND RECOMMENDATION - 4

    C.  Did the ALJ properly consider the opinion of the State agency medical consultant?

    D.  Did the ALJ err by determining that Plaintiff could perform her past relevant work?

    E.  Is Plaintiff disabled under the Vocational Medical Guidelines?

    F.  Can Plaintiff perform "other work?"

## DISCUSSION

A.    <u>Plaintiff's Credibility</u>

The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039. In order to reject the claimant's complaints, the ALJ must provide specific, cogent reasons for the disbelief. <u>Lester</u>, 81 F.3d at 834. The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id*. Without evidence of malingering, the reasons for rejecting the claimant's testimony must be clear and convincing. *Id*.

The ALJ found the plaintiff "not entirely credible." AR 771. This doubt as to Plaintiff's credibility was attributed to several factors: 1) the medical evidence does not substantiate her claims and she has a significant gap in her mental health treatment, 2) Plaintiff's activities of daily living, 3) her record contains factual inconsistencies, 4) and her behavior at the hearing was not "suggestive of a person who is experiencing disabling limitations." AR 770, 772-3.

The ALJ found that "[t]he medical evidence of record also does not substantiate the claimant's allegations of disabling limitations." AR 770. Plaintiff argues that the ALJ erred by rejecting her testimony because it was not supported by objective medical evidence. "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Id*. However, in this case, the Plaintiff's complaints are

called into question by the medical evidence. The ALJ noted that examining psychologist Dr. Sanchez found believed that Plaintiff was exaggerating her symptoms. AR 443. Dr. Sanchez' professional observations reflected a calm and personable woman, despite Plaintiff's own descriptions and severe rating on self-assessment. AR 443. Dr. Mashburn also noted a similar pattern. In assessing Plaintiff's adaptation, Dr. Mashburn opined that it, "appears fair at this time and she is underestimating her abilities at this time." AR 438. He also reported that "she doesn't believe she could handle a job, but this fear could be exacerbating helplessness, and anxiety." AR 438.

Thus, two psychologists, who had extensively evaluated Plaintiff, believed that she exaggerated her symptoms. Her self-reported symptoms did not correspond to the objective medical evidence gathered by Drs. Mashburn and Sanchez. AR 435-8, AR 440-443. This discrepancy is a specific and cogent reason to doubt Plaintiff's credibility. As a result, the Court need not address the several other reasons cited by the ALJ for challenging Plaintiff's credibility.

B. Examining Psychologists

The ALJ evaluates medical evidence as part of the record when determining disability. 20 C.F.R § 416.927(b). Rejection of a contradicted medical opinion provided by an examining physician requires "specific and legitimate reasons." *Lester*, 81 F.3d at 830. Plaintiff claims that the ALJ improperly rejected the opinions of Drs. Mashburn, Sanchez, and Swing.

*Dr. David Mashburn, Ph.D*

Plaintiff claims that the ALJ erred in rejecting Dr. David Mashburn's medical opinion as to her functional limitations. Dr. Mashburn evaluated Plaintiff in October 2007. His report says that Plaintiff's ability to reason was good, her memory was fair to good, she had fair social functioning, and good concentration and persistence. AR 438. He opined that Plaintiff

would have moderate difficulty in her ability to exercise judgment, make decisions, and perform routine tasks. AR 434. She would also have moderate difficulties responding to workplace pressures and expectations and maintaining appropriate behavior. AR 434. Most of Dr. Mashburn's assessments concluded that Plaintiff had only mild limitations in cognitive and social factors. AR 434. The ALJ's RFC reflects this evaluation: simple routine tasks as found in unskilled labor, superficial contact with the general public and coworkers, and ability to adapt to few and simple workplace changes. AR 768.

*Dr. Phyllis Sanchez, Ph.D.*

Dr. Sanchez evaluated Plaintiff in May 2009 and concluded that Plaintiff had moderate to severe cognitive and social functions. AR 442. In particular, Dr. Sanchez found severe impairments in Plaintiff's ability to perform routine tasks and interact appropriately in public contacts. AR 442. But, Dr. Sanchez' report also includes the opinion that Plaintiff is likely exaggerating. AR 443. She is "calm, personable in interview yet 'severe' on self report inventories for depression and anxiety." AR 443. The ALJ notes this assessment. AR 771. Given the evaluating medical professional's concern about the credibility of Plaintiff's self-assessment, the ALJ had specific and legitimate reason for rejecting the severe limitations included in Dr. Sanchez' opinion.

*Sierra Swing, Psy.D*

In January 2011, Dr. Swing evaluated Plaintiff, finding marked functional limitations. AR 589-90. She included a medical source statement,

> Given Lori's current level of functioning and results of her current testing, she would have a very difficult time performing or engaging in work related activities due to her inability to properly care for herself effectively in her activities of daily living. Results indicate significant impairment in her ability to reason, understand, or remember instructions or new information. She also has diminished abilities in concentration and adapting to new environments or situation. AR 590.

This assessment differs substantially from those of Drs. Mashburn and Sanchez. However, as seen above, those doctors found that Plaintiff was exaggerating her symptoms. Dr. Swing appears to have based a significant portion of her evaluation on Plaintiff's self report. For example, in describing how depression/anxiety would impact work, Dr. Swing wrote, "[b]eing outside increases her anxiety, which has gotten worse over the past year or so. It was difficult for her to get here today, but she has to do it so she did it…She reports having a little bit of hope, or tries to have hope, but it has become increasingly difficult." AR 588. This, and much of the other information included in Dr. Swing's report, comes straight from Plaintiff, not professional observation. This reliance on Plaintiff's self-report is a specific and legitimate reason to accord little weight to Dr. Swing's evaluation. An ALJ may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

    C.    <u>State Agency Medical Consultant</u>

State agency medical consultant, Norman Staley, M.D., reviewed Plaintiff's medical records and provided a Residual Functional Capacity (RFC). AR 583. Dr. Staley affirmed an earlier assessment performed by a lay reviewer and adopted the included RFC. AR 583. Dr. Staley establishes the RFC as limited to light, no LRS [ladders, ropes, or scaffolds], occasional overhead reaching, occasional handling with right upper extremity. AR 583, 538. Plaintiff alleges that the ALJ erred by failing to incorporate the limitations to occasional overhead reaching and gross manipulation with the right hand, and failing to explain the omission. This issue is discussed further infra in the discussion of the ALJ's determination as to "other work" at Step five of the analysis.

    D.    <u>Step 4: Past Relevant Work</u>

At step 4, the ALJ must determine if the claimant has the residual functional capacity to perform her past relevant work. Past relevant work is work the claimant has done in the past fifteen years for long enough to learn the work. SSR 82-62, 1982 WL 31386. That work must also amount to substantial gainful employment. SSR 82-62, 1982 WL 31386. Substantial gainful employment means work involving physical or mental activities, done for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b). Earnings demonstrate whether a job is considered substantial gainful employment. 20 C.F.R. § 404.1574(a)(1).

In 2001, the year of Plaintiff's short stint as a receptionist for Mothers Against Drunk Driving, the substantial gainful employment threshold was $740 per month. *See* 20 C.F.R. § 404.1574(b)(2)(ii)(B); www.ssa.gov/oact/cola/sga.html.  As a part-time receptionist, Plaintiff only earned $692 per month, below the level of substantial gainful employment.[1] Based on this information, Plaintiff's receptionist position was not substantial gainful employment and does not qualify as past relevant work.

The ALJ erred by considering the receptionist job as past relevant work. Upon a finding that Plaintiff had no past relevant work, the ALJ would have been required to proceed with the step five analysis of determining whether Plaintiff could perform other jobs in the economy. Here, the ALJ completed that analysis even after finding that Plaintiff could perform her past work. AR 774-5. The ALJ did not rely solely on the ability to perform past work to support the conclusion of not disabled. Therefore, any error had no relevance to the ALJ's ultimate disability conclusion and was harmless.

E.   Step 5: Medical-Vocational Guidelines

---

[1] Plaintiff reported that she worked four hours per day, five days per week at a rate of $8.00 per hour, which amounts to $160 per week.

REPORT AND RECOMMENDATION - 9

Plaintiff asserts that she is disabled under the Medical-Vocational Guidelines. Under the Medical-Vocational Guidelines, Plaintiff's age, high school education, and non-transferable skills would require a finding of disabled if she could only perform jobs classified as sedentary. *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995). But, the ALJ determined that Plaintiff had the RFC to perform light work. As a result, the Plaintiff is not conclusively disabled under the Medical-Vocational Guidelines.

### F. Can Plaintiff Perform "Other Work," at Step 5 of the Required Analysis?

Because the case cannot be resolved at any prior stage of the analysis, the remaining issue is whether there is "other work" (other than her prior work) which she can perform, and which is available in the economy in sufficient numbers. The VE testified there were three such jobs. Two of them were sedentary work. Because Plaintiff is "closely aproaching advanced age," a sedentary job could not defeat her claim to benefits. But one of the jobs, "grain picker," is light work. The case therefore comes down to whether Plaintiff can perform this job.

Plaintiff is right hand dominant. AR 28, 201. The ALJ found that Plaintiff's Madelung's deformity in her right wrist was a severe impairment. AR 766. At the hearing, the Plaintiff testified that she only had left wrist pain. AR 59-60. Unfortunately, this resulted in confusion as to which wrist, if any, impairs Plaintiff's ability to work. Subsequently, the ALJ focused solely on her left wrist, including hypothetical to the VE which assumed limitations to left upper extremity repetitive wrist activity. AR 66. In response to these questions, the VE testified, that based on professional knowledge and experience, both computer board inspector and grain picker require only occasional use of the left upper extremity and wrist. AR 70, 66. In fact, both of these jobs could be adequately performed with only one hand. AR 70. It is unclear whether this one-handed performance requires use of the dominant hand.

Both Plaintiff and Commissioner can make respectable arguments that the court should resolve this ambiguity on procedural grounds. The Commissioner claims that Plaintiff waived the right hand issue. "[A]ppellants must raise issues at their administrative hearings in order to preserve them on appeal before this Court." *Meanel*, 172 F.3d at 1115. Plaintiff had several opportunities to clarify the wrist at issue and pose hypotheticals concerning limited use of the right wrist, or both wrists, to the VE during the hearing. Plaintiff's failure to address the issue at the hearing results in a strong case for waiver.

However, the ALJ also has a duty to fully and fairly develop the record and assure that the claimant's best interests are considered. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  This duty applied even when the claimant is represented by counsel. *Id*. Ambiguous evidence triggers the ALJ's duty to conduct an appropriate inquiry. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff argues that the Commissioner bears the burden, at step five, of showing there is other work a claimant can perform. To meet that burden, the ALJ may rely on testimony by a VE. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Hypotheticals posed to the VE must set out all of claimant's limitations and restrictions. *Id*.  If the testimony of the VE fails to establish that Plaintiff can perform other work given all the limitations, the Commissioner has not met the step five burden.

In an effort to reach a result which is fair to both parties, and which complies with disability law, the court should reject both of these procedural arguments. It should be a relatively simple matter to secure a clarification of the VE's testimony. This will enable the Commissioner, and (if necessary) the court to make an informed decision on the merits.

On remand, the Commissioner should secure further testimony from a VE. The ALJ, or Plaintiff's counsel, should pose one or more hypothetical questions which accurately reflect the

REPORT AND RECOMMENDATION - 11

impairments and limitations previously found by the ALJ. Specifically, this should include any limitations on the use of the right wrist and/or hand, including any limitations on overhead reaching and gross manipulation. The questions should also specify that the person is right hand dominant. The VE can then testify as to whether such a person could perform the job of grain picker. The Commissioner should then take this testimony into account and make a new determination, consistent with this court's present findings.

## CONCLUSION

For the foregoing reasons, this case should be REVERSED and REMANDED for further proceedings consistent with this opinion. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, must be filed with the Clerk and served upon all parties to this suit no later than fourteen (14) days after the date on which this Report and Recommendation is signed. If no timely objections are filed, the Clerk shall note this matter for the earliest Friday after the deadline for objections, as ready for the Court's consideration. Failure to file objections within the specified time may affect a party's right to appeal.

If objections are filed, any response is due within fourteen (14) days after being served with the objections. A party filing an objection must note the matter for the court's consideration fourteen (14) days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages.

DATED this 19th day of August, 2014.

_____
JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12